**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000680
31-JAN-2017
02:44 PM**

NO. CAAP-15-0000680

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
REGGIE JOHNSON, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 14-1-0195)


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, and Reifurth and Ginoza, JJ.)

Defendant-Appellant Reggie Johnson appeals from the Judgment of Conviction and Probation Sentence ("Judgment"), which was filed on August 26, 2015, in the Circuit Court of the First Circuit ("Circuit Court").[1]  Johnson was convicted by a jury of the following offenses: Count 1, Unlawful Imprisonment in the Second Degree, in violation of Hawaii Revised Statutes ("HRS") section 707-722 (1993); Counts 2 & 4, Sexual Assault in the Second Degree, in violation of HRS section 707-731(1)(a) (Supp. 2012); Count 3, Sexual Assault in the Third Degree, in violation of HRS section 707-732 (Supp. 2012); and Count 6, Impersonating a Law Enforcement Officer in the Second Degree, in violation of HRS section 710-1016.7(1) (1993).  On appeal, Johnson argues that: (1) the Circuit Court violated his constitutional rights to testify or not to testify by failing to conduct a proper "ultimate" colloquy under *Tachibana v. State*, 79 Hawai'i 226, 900 P.2d 1293 (1995); and (2) there was no substantial evidence to support his convictions on Counts 1 through 4 where the Plaintiff-Appellee State of Hawai'i failed to negate his mistake-

_____

[1]  The Honorable Glenn J. Kim presided.

of-fact defense.[2/]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Johnson's appeal as follows and affirm.

I.    *Tachibana* Colloquy

Johnson asserts that the Circuit Court erred with regard to the *Tachibana* colloquy in four respects: (A) the prior-to-trial colloquy "went over the litany of rights reserved for the ultimate colloquy[,]" which "disregarded the mandate of the Hawaiʻi Supreme Court as to the timing of the ultimate colloquy, but in so doing may have also influenced Johnson's decision."; (B) failing to administer the ultimate colloquy immediately prior to the defense resting its case; (C) failing to advise Johnson in the ultimate colloquy that he would be subject to cross-examination by the State if he chose to testify; and (D) failing to engage Johnson in the "true colloquy" required by *State v. Han*, 130 Hawaiʻi 83, 306 P.3d 128 (2013) and *State v. Pomroy*, 132 Hawaiʻi 85, 319 P.3d 1093 (2014).

In *Tachibana*, the defendant asserted that his attorney prevented him from testifying at trial, and thus violated his right to testify.  *Id.* at 230, 900 P.2d at 1297.  The Hawaiʻi Supreme Court determined that in order to protect the right to testify, trial courts were required to "conduct an 'ultimate colloquy' in cases in which a defendant has not testified prior to the close of the case."  *State v. Monteil*, 134 Hawaiʻi 361, 370, 341 P.3d 567, 576 (2014) (citing *Tachibana*, 79 Hawaiʻi at 236, 900 P.2d at 1303).  *Tachibana* requires the trial court "to advise defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify."  *Monteil*, 134 Hawaiʻi at 370, 341 P.3d at 576.

> "In conducting the colloquy, the trial court must be careful
> not to influence the defendant's decision whether or not to

---

[2/]    Johnson does not challenge or argue the sufficiency of the evidence for his conviction in Count 6.

2

> testify." Accordingly, the court's advisory to the defendant must maintain an "even balance" between a defendant's right to testify and the right not to testify. Particular caution must be afforded to avoid infringing upon the right not to testify, which has been recognized as a "more fragile right" than the right to testify.

*Id.* at 370, 341 P.3d at 576 (citations and footnote omitted).

*Tachibana* provides trial courts with specific guidance for the ultimate colloquy in order to ensure that defendants are informed of their rights regarding their testimony, without influencing their decision. In particular, a trial court should advise a defendant that:

> he or she has a right to testify, that if he or she wants to testify that no one can prevent him or her from doing so, and that if he or she testifies the prosecution will be allowed to cross-examine him or her. In connection with the privilege against self-incrimination, the defendant should also be advised that he or she has a right not to testify and that if he or she does not testify then the jury can be instructed about that right.

*Tachibana*, 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7 (quoting *State v. Neuman*, 371 S.E.2d 77, 82 (W. Va. 1988)).

In addition to requiring an "ultimate colloquy" under *Tachibana*, the Hawaiʻi Supreme Court later determined in *State v. Lewis*, 94 Hawaiʻi 292, 12 P.3d 1233 (2000) that prior to the start of trial, trial courts must inform the defendant of his or her right to testify or not to testify and that if he or she has not testified by the end of the trial, the court will briefly question the defendant at that time to confirm that the decision is the defendant's own. *Id.* at 297, 12 P.3d at 1238 (quoting *Tachibana*, 79 Hawaiʻi at 237 n.9, 900 P.2d at 1304 n.9). In *Monteil*, the Hawaiʻi Supreme Court later added that in addition to the prior-to-trial advisements required under *Lewis*, "the trial courts when informing the defendant of the right not to testify during the pretrial advisement must also advise the defendant that the exercise of this right may not be used by the fact finder to decide the case." *Monteil*, 134 Hawaiʻi at 373, 341 P.3d at 579.

A. Prior-to-trial Colloquy

Johnson contends that the Circuit Court's "prior-to-trial advisory went beyond the parameters established by <u>Lewis</u> and <u>Tachibana</u>" because, in both *Tachibana* and *Lewis*, the Hawaiʻi

Supreme Court "stated that the prior-to-trial advisory should *only* consist of: 1) informing the defendant of his/her personal right to testify/not to testify; and 2) alerting the defendant that if he/she has not testified by the end of trial, the court would briefly question him/her to ensure that the decision not to testify is the defendant's own decision." (Emphasis added.) This argument misstates the law.

In both *Tachibana* and *Lewis*, the Hawai'i Supreme Court did not express a limitation on the content of the prior-to-trial colloquy, as Johnson suggests above. *Lewis*, 94 Hawai'i at 297, 12 P.3d at 1238 (quoting *Tachibana*, 79 Hawai'i at 237 n.9, 900 P.2d at 1304 n.9). Here, pursuant to *Lewis* and *Monteil*, the Circuit Court informed Johnson of his right to testify or not testify; that if he did not testify by the end of trial, the Circuit Court would again question him to ensure that the decision not to testify was his own; and that if he exercised his right not to testify, this could not be used by the fact finder to decide the case.

In addition, the Circuit Court essentially rendered the *Tachibana* ultimate colloquy prior to trial by also informing Johnson that if he decided to testify, the prosecutor would be allowed to cross-examine him. During this prior-to-trial colloquy, the Circuit Court asked Johnson on multiple occasions whether he understood what the Circuit Court was saying regarding his testimonial rights, and reaffirmed that Johnson had no questions. In our view, the Circuit Court did not err when it conducted the *Tachibana* ultimate colloquy in addition to the prior-to-trial advisory. *See State v. Hillis*, No. CAAP-15-0000482, 2016 WL 6094216, *2 (Haw. App. Oct. 19, 2016)(where this court determined with regard to the prior-to-trial advisory, that "advising [defendant] of additional rights that are to be discussed later in the trial cannot be said to render the pretrial advisement overly complicated"), *cert. denied*, No. SCWC-15-0000482, 2017 WL 128577 (Haw. Jan. 13, 2017).

B. Timing of the *Tachibana* ultimate colloquy

Johnson argues that the "Circuit Court erred in failing to administer the (attempted) ultimate colloquy at the proper

time; immediately prior to the defense resting its case." Johnson contends that according to *Tachibana*, "the supreme court, after considering the positions of other courts, decided that the ultimate colloquy should be administered 'immediately prior to the close of the defendant's case.'" Johnson appears to assert that he was prejudiced when the Circuit Court gave the *Tachibana* ultimate colloquy prior to the defense presenting its evidence. This argument is unpersuasive.

According to *Tachibana*, "the ideal time to conduct the colloquy is immediately prior to the close of the defendant's case[,] . . . *whenever possible*, the trial court should conduct the colloquy at that time." *Tachibana*, 79 Hawai'i at 237, 900 P.2d at 1304 (emphasis added). The *Tachibana* court further stated that,

> [i]f the trial court is unable to conduct the colloquy at that time . . . such failure will not necessarily constitute reversible error. If a colloquy is thereafter conducted and the defendant's waiver of his or her right to testify appears on the record, such waiver will be deemed valid unless the defendant can prove otherwise by a preponderance of the evidence.

*Id.* at 237, 900 P.2d at 1304.

In this case, the *Tachibana* ultimate colloquy was given after the close of the State's case-in-chief and the defense's motion for judgment of acquittal, but not immediately prior to the close of Johnson's case, as recommended by *Tachibana*. The Circuit Court asked Johnson's counsel whether Johnson was planning on testifying, asked counsel again to confirm that decision, and then stated its intention to "do *Tachibana* now" since the jury expected to be out for as long as a half-hour. Although the *Tachibana* ultimate colloquy was not performed immediately prior to the close of Johnson's case, it was very close in time. The *Tachibana* ultimate colloquy was not followed by additional witness testimony. Rather, Johnson's counsel only presented a stipulation between the parties as to the authenticity of the 911 call made by Johnson when he saw the complaining witness ("CW") and Robert Featheran, the CW's boyfriend, in the park, and the recording of the call itself. Thus, it appears that the amount of time between immediately prior to the close of Johnson's case and when the Circuit Court

5

actually administered the *Tachibana* ultimate colloquy was negligible.

Johnson also appears to argue that had the Circuit Court given the *Tachibana* ultimate colloquy after he presented the stipulation, he may have chosen to testify. The argument is consistent with the *Tachibana* court's opinion that "the defendant may not be in a position to decide whether to waive the right to testify until all other evidence has been presented." 79 Hawaiʻi at 237, 900 P.2d at 1304. In this case, though, with only the stipulation about Johnson's 911 call to be presented, Johnson was well aware of the evidence in the defense case when the colloquy was given. Accordingly, the Circuit Court did not err with regard to the timing of the *Tachibana* ultimate colloquy, and Johnson's decision to waive his right was voluntary, intelligent, and knowing.

C.    Content of *Tachibana* ultimate colloquy

Johnson argues that the "Circuit Court's ultimate colloquy was also substantively deficient as the court failed to advise Johnson that he would be subject to cross-examination by the State if he chose to testify." Johnson asserts that because the Circuit Court omitted notification that he would be subject to cross-examination by the State if he chose to testify, he did not "knowingly and intelligently waive[] his right to testify." Johnson correctly notes that the Circuit Court's *Tachibana* ultimate colloquy was deficient in that it did not explain that if he testified, he was subject to cross-examination by the State. Since this aspect of the *Tachibana* ultimate colloquy is required, "[o]nce a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." *Tachibana*, 79 Hawaiʻi at 240, 900 P.2d at 1307.

> Under the harmless-beyond-a-reasonable-doubt standard, the question is "whether there is a reasonable possibility that error may have contributed to conviction." . . .
>
> When deciding whether an error is harmless beyond a reasonable doubt, the error must be viewed "in the light of the entire proceedings and given the effect which the whole record shows it to be entitled."

*State v. Akahi*, 92 Hawai'i 148, 150-51, 988 P.2d 667, 669-70 (App. 1999) (citations omitted). The supreme court has held that "to determine whether a waiver [of a fundamental right] was voluntarily and intelligently undertaken, this court will look to the totality of the facts and circumstances of each particular case." *Han*, 130 Hawai'i at 89, 306 P.3d at 134 (quoting *State v. Friedman*, 93 Hawai'i 63, 68-69, 996 P.2d 268, 273-74 (2000)).

Here, three factors weigh in favor of concluding that there is no reasonable possibility that error may have contributed to Johnson's conviction. First, as noted above, the Circuit Court provided the complete colloquy to Johnson as part of its prior-to-trial advisory. Johnson stated at the time that he understood the advisory, and that he had no additional questions. Second, Johnson was present throughout his trial, and watched the State's and his defense counsel take turns in questioning each witness as they took the stand. And third, in light of the fact that Johnson elected not to testify, advising him that he would be subject to corss-examination would only tend to make him less likely to testify, not more likely to testify.

Therefore, although the Circuit Court did not remind Johnson during the ultimate colloquy that the prosecution could cross-examine him if he chose to testify, given the totality of the circumstances, including his stated intention not to testify, it is reasonable to conclude that Johnson was aware of his right to testify, his right not to testify, that if he testified he could be cross-examined by the prosecution, that if he did not testify it would not be held against him, and that the decision not to testify was his own. Furthermore, even though the Circuit Court inquired before Johnson had presented the 911 call and its related stipulation, it is also reasonable to conclude that he understood his testimonial rights prior to deciding not to testify. Accordingly, we conclude that Johnson voluntarily and intelligently waived his right to testify, and the failure to conduct a complete *Tachibana* ultimate colloquy was harmless error. *See State v. Boyd*, No. CAAP-15-0000528, 2016 WL 3369242, *3 (Haw. App. June 15) (holding that given the totality of the circumstances, although the trial court failed to obtain a

response from defendant as to whether he understood his rights as required by *Tachibana*, defendant was aware of his rights due to the trial court's prior-to-trial advisement and another colloquy given during the State's case-in-chief, and thus the failure to conduct an adequate *Tachibana* ultimate colloquy was harmless error), *cert. denied*, SCWC-15-0000528, 2016 WL 4990250 (Haw. Sept. 19, 2016); *State v. Goebel*, No. CAAP-13-0000064, 2016 WL 2940794, *2 (Haw. App. Apr. 21) (concluding that under the totality of the circumstances, the trial court's omission of advising defendant that if he chose to testify, no one could prevent him from doing so, was harmless error), *cert. denied*, No. SCWC-13-0000064, 2016 WL 4506118 (Haw. Aug. 26, 2016); *but see State v. Doo*, No. CAAP-15-0000449, 2016 WL 6906706, *3 (Haw. App. Nov. 23, 2016) (determining that the trial court's *Tachibana* colloquy did not advise defendant that she had the right to testify and that no one could prevent her from doing so, and thus she was not adequately advised of her right not to testify), *petition for cert. filed*, No. SCWC-15-0000449, 2017 WL _____ (Haw. Jan. 19, 2017); *State v. Ezra*, No. CAAP-15-0000868, 2016 WL 6305404, *1 (Haw. App. Oct. 27, 2016) (holding that it was error when the trial court failed to advise defendant that he had a right to testify, and that, if he wanted to testify, no one could prevent him from doing so).

D.   True colloquy

Johnson contends that the Circuit Court "failed to engage [him] in the 'true colloquy' required by <u>Han</u> and <u>Pomroy</u>." Johnson further asserts that "[t]here was no discussion, exchange or ascertainment that Johnson understood each of the individual advisements listed by the court." Although, Johnson refers to both *Han* and *Pomroy*, he fails to explain how either case applies to his case on appeal.

In *Han*, the Hawai‘i Supreme Court held that "a colloquy between the judge and a defendant involves a verbal exchange in which the judge ascertains the defendant's understanding of the defendant's rights." 130 Hawai‘i at 84, 306 P.3d at 129. The *Han* court determined that the trial court failed to ascertain that the defendant understood his right to testify because the

8

trial court simply advised defendant of his rights, "without any 'discussion,' 'exchange' or ascertainment that [defendant] understood his rights[,]" *id.* at 90, 306 P.3d at 135, and the defendant's language barrier was a "'salient fact' that impacted [defendant]'s ability to understand the rights he waived." *Id.* at 92, 306 P.3d at 137.

In *Pomroy*, the Hawai'i Supreme Court held that the trial court failed to ensure that defendant understood his rights, and accordingly failed to obtain the on-the-record waiver required by *Tachibana*. 132 Hawai'i at 95, 319 P.3d at 1103. In so concluding, the *Pomroy* court determined that it was clear from the transcript that defendant did not understand what the trial court was telling him, and even said "I don't understand what you're saying." *Id.* at 93, 319 P.3d at 1101.

*Han* and *Pomroy* are inapposite to this case. Here, during the *Tachibana* ultimate colloquy, the Circuit Court held a proper oral exchange with Johnson. *See Han*, 130 Hawai'i at 90-91, 306 P.3d at 135-36 (holding that the defendant's two responses to the court during the colloquy did not indicate that he understood that he had a right to testify); *State v. Celestine*, No. CAAP-14-0000335, 2016 WL 3573992, *2 (Haw. App. June 29) (stating, in reference to *Han*, that "stopping after each right of the *Tachibana* advisement is addressed to determine whether the defendant understands the right is not a per se requirement for an adequate *Tachibana* colloquy"), *cert. granted*, SCWC-14-0000335, 2016 WL 6426441 (Oct. 28, 2016).

Here, after the Circuit Court advised Johnson that,

> you have a constitutional right to testify. And it's your right and no one can keep you from testifying if you want to. And you also have a constitutional right not to testify. And if you choose not to testify, I will tell the jury they can't hold that against you in any way in deciding your case[,]

the Circuit Court asked Johnson if he understood "all of that," and, according to the transcript, Johnson responded "Yes, Your Honor." The Circuit Court then followed up with additional questions regarding whether exercising the right not to testify was Johnson's decision. Unlike in *Han*, where the trial court did not ask whether Han understood his rights, and did not obtain Han's acknowledgment that he understood his rights, the Circuit

Court advised Johnson of all the rights required by *Tachibana*,[3] asked Johnson whether he understood those rights, and obtained his acknowledgment that he understood his rights. Nothing on the record suggests that Johnson did not understand his rights. Accordingly, we conclude that the prior-to-trial advisement and the *Tachibana* ultimate colloquy were collectively sufficient, and that Johnson's on-the-record waiver of his right to testify was valid.

II. Sufficiency of evidence

The law provides that in prosecuting any offense,

[I]t is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if:

(1)    The ignorance or mistake negatives the state of mind required to establish an element of the offense; or

(2)    The law defining the offense or a law related thereto provides that the state of mind established by such ignorance or mistake constitutes a defense.

Haw. Rev. Stat. § 702-218 (1993). Johnson asserts that there was no substantial evidence to support his conviction because although CW testified that "she did not consent to any of the charged acts, her lack of consent was not directly expressed to Johnson." This argument is without merit.

When challenged for sufficiency on appeal, the evidence introduced at trial is considered in the strongest light for the prosecution. The test is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. *State v. Xiao*, 123 Hawai'i 251, 257, 231 P.3d 968, 974 (2010). "Substantial evidence is 'credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.'" *Id.* (quoting *State v. Fields*, 115 Hawai'i 503, 512, 168 P.3d 955, 964 (2007)).

A. Count 1

HRS section 707-722(1) states in relevant part, that "[a] person commits the offense of unlawful imprisonment in the

---

[3]    With the exception of advising Johnson that if he chose to testify, he could be cross-examined by the State, as discussed above.

second degree if the person knowingly restrains another person."
Haw. Rev. Stat. § 707-722(1). HRS section 707-700 defines
"restrain," as "means to restrict a person's movement in such a
manner as to interfere substantially with the person's liberty:
(1) By means of force, threat, or deception[.]" Haw. Rev. Stat.
§ 707-700. Johnson argues that,

> [i]t was undisputed that [CW] willingly entered Johnson's
> car[, and w]hile [CW] claimed that she got into the car and
> did not try to get out for various reasons - she was scared,
> she was confused, she thought something worse might happen if
> she ran away - she did not express this to Johnson.

In this case, there is substantial evidence to negate
Johnson's mistake-of-fact defense and to support the trier of
fact's conclusion that Johnson knowingly restrained CW. Johnson
established control over CW and Featheran by impersonating a
military police officer, and used CW and Featheran's fear of
going to jail to control them. CW and Featheran knew that
Johnson had called the police with their descriptions, so when
Johnson drove up to CW and said "Hey, come in the car. There's
cops around the area that are looking out for you[,]" and since
CW heard sirens, she "freak[ed] out [and] . . . wasn't thinking
straight[,]" and got into Johnson's car. As they neared Waikele
Shopping Center, CW requested that Johnson drop her off, but
Johnson continued to drive, and locked the car doors. Johnson
asserted that he was planning to take CW to the Waipahu Police
Station, but CW knew that the police station did not exist.
Johnson then stopped the car near a new housing area by Waipahu
High School, told CW that she did not have to go to jail, and
that there were other forms of payment that she could do instead.

Based on CW's testimony at trial, the jury could have
reasonably concluded that Johnson knowingly restrained CW because
after CW requested to be dropped off, Johnson locked the car
doors and continued to drive all the while deceiving CW by
impersonating military police. *See State v. Sprattling*, 99
Hawai'i 312, 317, 55 P.3d 276, 281 (2002) ("[I]t is well-settled
that an appellate court will not pass upon issues dependent upon
the credibility of witnesses and the weight of the evidence; this
is the province of the [trier of fact]." (quoting *State v. Sua*,
92 Hawai'i 61, 69, 987 P.2d 959, 967 (1999))). "Moreover, the

testimony of a single percipient witness may constitute substantial evidence to support a conviction." *State v. Rodriguez*, No. CAAP-12-0000212, 2013 WL 3198775, *3 (Haw. June 25, 2013) (citing *State v. Eastman*, 81 Hawai'i 131, 141, 913 P.2d 57, 67 (1996)). Accordingly, the evidence adduced at trial in this case was sufficient to negate Johnson's mistake-of-fact defense and enable a person of reasonable caution to conclude that Johnson knowingly restrained CW.

    B. Counts 2-4

Counts 2 and 4 implicate HRS section 707-731(1)(a), which states in relevant part that "[a] person commits the offense of sexual assault in the second degree if: (a) The person knowingly subjects another person to an act of sexual penetration by compulsion[.]"[4/] Haw. Rev. Stat. § 707-731(1)(a). Count 3, on the other hand, implicates HRS section 707-732(1)(a), which states in relevant part that "[a] person commits the offense of sexual assault in the third degree if: (a) The person recklessly subjects another person to an act of sexual penetration by compulsion[.]" Haw. Rev. Stat § 707-732(1)(a).

With regard to Counts 2 and 4, Johnson asserts that when he stopped the car and told CW that there were "other forms of payment" instead of going to jail, it was CW who assumed that Johnson meant sex. Further, Johnson contends that he did not use physical force and was not agitated or upset when he requested that CW move to the front seat, and thereafter to the back seat, to take off her pants and underwear, or let him touch her vagina, and that although CW initially refused, she eventually complied.

There is substantial evidence to negate Johnson's mistake-of-fact defense and support the trier of fact's conclusion that Johnson committed two counts of sexual assault in the second degree. As to Count 2, according to CW's testimony, after Johnson told her that there were other forms of payment that she could do instead of jail, CW told Johnson "no," and to "[j]ust take [her] to the police station, I don't want to -- I

---

[4/]     HRS section 707-700 defines "compulsion," as an "absence of consent, or a threat, express or implied, that places a person in fear of public humiliation, property damage, or financial loss. Haw. Rev. Stat § 707-700.

don't want to have sex or anything. I -- just take me down to the police station." Johnson ignored CW's request, started to drive again, and asked CW to move to the front seat. CW refused, but eventually complied because Johnson appeared to be getting angry. CW also recognized that Johnson was lying to her when he told her they were going to the Schofield Police Station because they were in Pearl City. Johnson then requested that CW take off her pants and underwear, which she also refused to do, but after he continued to pressure her, CW complied because she was afraid that something worse would happen to her. Johnson inserted his fingers into CW's vagina, and after CW cried and told Johnson to stop, Johnson said "Don't worry. I'm only going to play with you for a little bit, and then you'll be -- then you'll be okay."

As to Count 4, CW testified that Johnson continued to pressure her to move to the backseat, telling her that "he was just trying to save me from going to jail, . . . this is an easier payment than me going to jail[.]" After CW moved to the backseat, Johnson pushed her against the door, told her to lift her legs, and inserted his penis into her vagina. CW testified that she cried and told Johnson to stop, but Johnson continued.

With regard to Count 3, there is substantial evidence to negate Johnson's mistake-of-fact defense and support the trier of fact's conclusion that Johnson committed one count of sexual assault in the third degree.[5] Johnson states that "[a]lthough [CW] maintained that she did not want to give Johnson a blow job and that she was 'crying and gagging' during the act, the fact remained that she had offered Johnson the blow job without any prompting by Johnson." However, the evidence supports a finding that CW only offered Johnson a blow job after being driven to a secluded area without her consent and in order to avoid what reasonably appeared to be Johnson's desire to engage in intercourse with her. Johnson parked at the end of a paved road, got out of his car, and asked CW to get into the back seat.

_____

[5]     In his opening brief, Johnson argues that for Count 3, he was convicted of Sexual Assault in the Second Degree. However, according to the Judgment, in Count 3, Johnson was convicted of Sexual Assault in the Third Degree. The required state of mind for Count 3 is not "knowingly," but "recklessly".

CW says that she was crying, told Johnson "no," that it was her first time, and she did not want to do this. CW instead offered Johnson a blow job, and CW cried and gagged while engaged in the act.

The evidence was sufficient that the jury could have reasonably determined that Johnson knowingly or recklessly subjected CW to acts of sexual penetration by compulsion and that CW did not consent. *See Sprattling*, 99 Hawai'i at 317, 55 P.3d at 281. Accordingly, the evidence adduced at trial in this case was sufficient to negate Johnson's mistake-of-fact defense and enable a person of reasonable caution to conclude that Johnson knowingly or recklessly subjected CW to acts of sexual penetration by compulsion.

In sum, there was substantial evidence to negate Johnson's mistake-of-fact defense and support his conviction on each of the four counts.

Therefore, we affirm the Judgment, filed on August 26, 2015 in the Circuit Court of the First Circuit.

DATED: Honolulu, Hawai'i, January 31, 2017.

On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

James M. Anderson,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge